IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SANYA LEE M.,[1]

              Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

              Defendant.

Case No. 6:20-cv-00896-MK

**OPINION AND ORDER**

**KASUBHAI, Magistrate Judge.**

      Sanya M. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is reversed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. Id. Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.     PLAINTIFF'S APPLICATION**

Born in 1979, Plaintiff was 33 years old on her alleged onset date of January 2, 2013. (Tr. 20, 94, 193.) Plaintiff later amended her alleged disability onset date to January 1, 2015. Plaintiff has a GED and completed specialized training in cosmetology. (Tr. 232, 1012, 2122.) Plaintiff filed her application for DIB on May 9, 2017, alleging disability due to carpal tunnel syndrome, bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), obesity, fibromyalgia, and degenerative disc disease. (Tr. 69, 95.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared and testified at a hearing held on July 26, 2018. (Tr. 46-78.) After the hearing, the ALJ issued a written decision dated April 19, 2019 denying Plaintiff's application. (Tr. 17-32.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5.) Plaintiff now seeks judicial review of that decision.

## II. THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. Id. at 724-25. The claimant bears the burden of proof for the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. Id.; Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." Tackett, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. Bustamante, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 22.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, her alleged onset date. (Tr. 22.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease, obesity, carpal tunnel syndrome, fibromyalgia, depression, anxiety, and ADHD. (Tr. 22.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. (Tr. 23.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: she can occasionally climb ramps, stairs, ladders and ropes; she can occasionally stoop, kneel, crouch, and crawl; she can frequently handle, finger, and feel with the right, dominant upper extremity; and she can perform simple, routine tasks involving one to two step instructions that can be learned in 30 days or less. (Tr. 25.)

At step four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (Tr. 30.) At step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, including office helper, cleaner/housekeeper, and collator operator. (Tr. 31-32.) The ALJ therefore concluded that Plaintiff was not disabled from the date of alleged disability onset through her date last insured. (Tr. 32.)

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion evidence; (2) rejecting the lay testimony without providing reasons for doing so; (3) improperly rejecting Plaintiff's subjective symptom testimony; and (4) making improper findings at Step Three.

**DISCUSSION**

I.  **MEDICAL OPINION EVIDENCE**

Plaintiff first argues that the ALJ improperly rejected the opinions of Marianne Straumfjord, M.D., Lloyd Wiggins, M.D., and Neal Berner, M.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**1. Marianne Straumfjord, M.D.**

Dr. Straumfjord assessed Plaintiff's ability to perform mental work-related activities in January 2019. (Tr. 30, 2270-73.) She diagnosed bipolar disorder and opined that Plaintiff had mild

PAGE 5 – OPINION AND ORDER

or moderate limitations in understanding and remembering simple instructions and carrying out simple instructions. (Tr. 2270.) Dr. Straumfjord assessed marked limitations in Plaintiff's ability to perform complex tasks and interact with the public, co-workers, and supervisors, and extreme limitations in Plaintiff's ability to respond appropriately to work situations and changes in routine. (Tr. 2270-71.)

Consistent with some of Dr. Straumfjord's opinion, the ALJ limited Plaintiff to simple, routine tasks involving one to two step instructions that can be learned in 30 days or less. The ALJ however rejected Dr. Straumfjord's assessment of marked and extreme mental limitations. (Tr. 25, 30.) First, the ALJ found that Dr. Straumfjord's assessment of severe mental limitations was inconsistent with the record as a whole. The ALJ may discount a medical opinion when it is inconsistent with the medical record. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Plaintiff had the ability to appropriately interact with a variety of caseworkers, examining sources, and treating sources with no documented history of outbursts or inappropriate behavior. (Tr. 30, 609, 1242, 1267, 2123-24.) The ALJ also noted that Plaintiff was able to attend church, go grocery shopping, swim at a public pool, and care for her infant son despite her husband's long absences. (Tr. 30, 1685, 2152.) These intermittent, self-regulated, non-work activities and interactions, however, are consistent with Dr. Straumfjord's opinion that Plaintiff suffers from mental limitations that would restrict work-related tasks, such as interacting appropriately with supervisors and coworkers, and responding appropriately to work-related situations and changes in a routine work setting. (Tr. 2271.) Indeed, Dr. Straumfjord stressed in her opinion that Plaintiff responds inappropriately under stress, and thus activities like attending church and swimming at a public pool do not constitute substantial evidence contradicting Dr. Straumfjord's medical opinion.

The ALJ next found that Dr. Straumfjord's opinion was unsupported by medical evidence showing that Plaintiff's mental health symptoms improved with treatment. (Tr. 30.) The ALJ need not accept a physician's opinion that is inadequately supported by clinical findings. [Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012)](). Here, medical evidence suggests that some of Plaintiff's symptoms improved with conservative treatment such as meditation and mindfulness techniques. (Tr. 1688, 1735, 1736, 1739, 1775, 2058, 2152, 2195, 2219, 2248.) The Commissioner argues that this evidence supports the ALJ's rejection of Dr. Straumfjord's more extreme mental limitations. The record, however, reflects that any improvements in Plaintiff's mental health symptoms with medication mitigated her symptoms merely to the extent that she could maintain relationships "within her family." (Tr. 2220.) The evidence of Plaintiff's improvement with minimal treatment thus does not contradict Dr. Straumfjord's opinion that Plaintiff suffers from marked and extreme mental limitations in functional areas implicated in substantial gainful activity.

Plaintiff also points out that the ALJ rejected Dr. Straumfjord's diagnosis of bipolar disorder and provided no reason for doing so, other than that he did not find it to be "persuasive." (Tr. 28.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease, obesity, carpal tunnel syndrome, fibromyalgia, depression, anxiety, and ADHD, but did not include Dr. Straumfjord's bipolar diagnosis in the list of severe impairments. (Tr. 22.) An ALJ's omission at step two is harmful if he does not incorporate the medically determinable impairment's specific functional limitations into the RFC.

Here, the record is clear that Plaintiff suffers from bipolar disorder. In addition to Dr. Straumfjord, state agency mental health physicians also noted that Plaintiff suffers from bipolar disorder. (Tr. 99, 117.) Plaintiff's ability to perform activities and her apparent improvement with treatment are consistent with the manic and recurrent nature of bipolar episodes. By failing to

acknowledge Plaintiff's bipolar disorder as a medically determinable impairment, the ALJ failed to incorporate the functional limitations associated with manic and depressive episodes into the RFC. The ALJ's rejection of Dr. Straumfjord's diagnosis of bipolar disorder was error.

### 2. Lloyd Wiggins, M.D., and Neal Berner, M.D.

Consultative physicians Dr. Wiggins and Dr. Berner reviewed the record and opined that Plaintiff was capable of light exertion work activity with postural limitations, and that Plaintiff could occasionally perform gross manipulations with the right hand and frequently perform gross manipulations with the right hand and frequently perform gross manipulations with the left hand. (Tr. 103, 121.) The ALJ largely accepted these limitations, but rejected the limitation on Plaintiff's left hand and found that she could perform frequent fine and gross manipulations with her right hand. (Tr. 28.)

In support of this finding, the ALJ found that Dr. Wiggins and Dr. Berner's opinion regarding Plaintiff's ability to use her hands was inconsistent with EMG testing that revealed only mild carpal tunnel on the left and moderate carpal tunnel on the right. (Tr. 28, 2052.) The ALJ may discount a medical opinion when it is inconsistent with the medical records. Tommasetti, 533 F.3d at 1041. Here, Plaintiff reported in May 2018 that her left side was "doing very well" with conservative treatment. (Tr. 2052.) Further, examination findings showed that Plaintiff had normal strength without grip release or ataxia and Plaintiff was expected to have further improvement with surgery. (Tr. 28, 2051, 2053.) On this record, the ALJ provided a legally sufficient reason for rejecting selected limitations offered by Drs. Berner and Wiggins. Tommasetti, 533 F.3d at 1041.

## II. SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's

testimony. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing and in her application for benefits, Plaintiff testified that she was completely disabled as of January 1, 2015 due to a combination of mental and physical impairments, and that she was unable to work primarily due to her mental impairments. (Tr. 60-61, 95.)

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. (Tr. 26-30.) The ALJ found that Plaintiff's testimony of debilitating impairments conflicted with evidence that Plaintiff's conditions improved with conservative treatment. The ALJ may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008). Evidence of conservative treatment is "sufficient to discount a claimant's testimony regarding the severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Further, evidence that a claimant's symptoms improved with treatment provides a clear and convincing reason to reject claims of lack of improvement. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Impairments that can be controlled effectively with treatment are not disabling. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, Plaintiff reported debilitating mental impairments, as well as difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. (Tr. 60-61, 95.) Nevertheless, Plaintiff's medical records show only mild objective findings including full strength and intact reflexes; and improvement with treatment including a remission in chronic pain with "conservative management," and improved fibromyalgia symptoms with Cymbalta. (Tr. 467, 469, 477, 479, 2057-60.) This

evidence supports the ALJ's inference that Plaintiff was not as physically limited as alleged in her subjective symptom testimony. Warre, 439 F.3d at 1006.

Similarly, despite Plaintiff's allegations of severe physical and manipulative limitations due to carpal tunnel syndrome, an examination revealed no atrophy or triggering, full motion in Plaintiff's elbow, wrist, and digits, and intact flexor and extensors. (Tr. 2050.) Based on this evidence, the ALJ reasonably rejected Plaintiff's testimony that she was severely limited in handling, fingering, and feeling on her right side because they were inconsistent with the medical evidence. (Tr. 25-30.) Carmickle, 533 F.3d at 1161.

The ALJ also found that Plaintiff's mental limitations improved with treatment. (Tr. 28-29.) Plaintiff began mental health treatment in 2014 which included medication management and supportive therapy. (Tr. 28-29, 1735, 1739.) Plaintiff's doctors reported improvement with treatment, and Plaintiff's mental status findings were at times largely normal. (Tr. 1688, 1775, 2058, 2151.) Given the waxing and waning nature of bipolar disorder, however, it was not reasonable for the ALJ to infer that Plaintiff's mental limitation were less severe than alleged in her testimony based on a handful of normal mental status examinations. Carmickle, 533 F.3d at 1161.

The ALJ next noted that Plaintiff failed to comply with treatment recommendations. Failure to follow a prescribed course of treatment is a valid reason for rejecting a claimant's allegations, absent medical evidence that the claimant's failure is attributable to her mental impairment rather than her own personal preference. Molina v. Astrue, 674 F.3d 1104, 1113-1114 (9th Cir. 2012). Here, Dr. Straumfjord and Plaintiff's case managers expressed concern about Plaintiff's frequent use of marijuana. (Tr. 2139-40, 2143.) Nevertheless, as of September 2018, Plaintiff reported that she continued to smoke a bowl of marijuana every morning. (Tr. 2119.)

Plaintiff also discontinued her prescribed psychotropic medications and stopped engaging consistently with therapy. While Plaintiff's failure to comply with treatment recommendations is documented in the record, there is nothing in the record that suggests Plaintiff's inconsistent engagement with treatment and medication is attributable to a personal preference rather than her documented mental impairments. On this record, Plaintiff's failure to follow a prescribed course of treatment does not support the ALJ's rejection of her testimony regarding her mental symptoms and limitations. Molina, 647 F.3d at 1113-14.

The ALJ noted, finally, that Plaintiff's level of activity was inconsistent with her alleged symptoms and limitations. (Tr. 28-30.) An ALJ may discount a claimant's testimony when her activities "are incompatible with the severity of the symptoms alleged." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, while Plaintiff testified that she was unable to get along with others, the record reflects that she engaged in some social activities, including organizing a girls' weekend with childhood friends in 2018, and volunteering for 20 hours per week with a veteran outreach program for about two years during the relevant period. (Tr. 47, 253, 258, 609, 2065, 2177.) Plaintiff's self-directed volunteer activities and engagement with childhood friends, however, are not incompatible with the severity of the symptoms alleged in her testimony. Ghanim, 763 F.3d at 1165. As discussed above, Plaintiff's mental symptoms were largely triggered under stress, and therefore it would not be rational to expect that Plaintiff's voluntary activities would exacerbate her mental symptoms. On this record, while the ALJ's rejection of Plaintiff's testimony regarding her physical limitations was supported by substantial evidence, the ALJ failed to provide legally sufficient reasons to reject Plaintiff's testimony regarding her mental limitations.

### III. LAY TESTIMONY OF HEATHER LYNCH

Plaintiff next argues that the ALJ improperly rejected the lay testimony of vocational counselor Heather Lynch. Ms. Lynch wrote that Plaintiff had difficulties with communication, interpersonal skills, managing and caring for herself, and work stamina. (Tr. 376-77.)

The ALJ is required to provide germane reasons for rejecting a lay witness's testimony. Molina, 674 F.3d at 1122. Here, the ALJ rejected Ms. Lynch's more extreme limitations on mental functioning but did not provide reasons for this rejection in his written decision. The Commissioner argues that this omission is not harmful error because Ms. Lynch's testimony largely mirrored Plaintiff's subjective symptom testimony, which the ALJ also rejected. As discussed above, however, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony regarding her mental limitations. To the extent that Ms. Lynch's opinion provides additional insight into Plaintiff's mental limitations, the ALJ's failure to discuss his reasons for rejecting Ms. Lynch's testimony was not harmless. Molina, 674 F.3d at 1115.

### IV. STEP THREE FINDINGS

Plaintiff argues, finally, that the ALJ erred by failing to find her combined impairments met or equaled a listing at step three. At step three of the sequential evaluation, a claimant can establish disability if she proves that her impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Bowen, 482 U.S. at 140-41. Listed impairments contain "strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013).

Plaintiff argues that the ALJ should have found her combined impairments met or equaled on or more of Listings 12.04, 12.06, and 12.11. To satisfy the requirements of Listings 12.04, 12.06, or 12.11, a claimant must show an "extreme limitation of one or marked limitation of two"

areas of mental functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(F)(2)(b). A "marked limitation" means functioning in this area "independently, appropriately, effectively, and on a sustained basis is seriously limited." Id. at 12.00(F)(2)(d). To show an extreme limitation, a claimant must show she is unable to function independently, appropriately, effectively, and on a sustained basis." Id. at 12.00(F)(2)(e).

Here, Dr. Straumfjord assessed marked limitations in Plaintiff's ability to perform complex tasks and interact with the public, co-workers, and supervisors, and extreme limitations in Plaintiff's ability to respond appropriately to work situations and changes in routine. (Tr. 2270-71.) Dr. Straumfjord's opinion thus constitutes evidence satisfying the requirements of Listings 12.04, 12.06, and 12.11 that a claimant must show an "extreme limitation of one or marked limitation of two" areas of mental functioning. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Straumfjord's opinion. Because the ALJ improperly rejected Dr. Straumfjord's opinion that Plaintiff had extreme and marked limitations in areas of mental functioning, the ALJ further erred at step three.

## REMAND

When the erroneously rejected testimony is credited as true, remand is appropriate. Garrison v. Colvin, 759 F.3d 995, 1022 (9th Cir. 2014). Here, the ALJ erred by rejecting the medical opinion of Dr. Straumfjord, Plaintiff's testimony regarding her mental limitations, and the opinion of Plaintiff's vocational counselor Ms. Lynch. Dr. Straumfjord's opinion establishes extreme and marked limitations in Plaintiff's mental functioning. Because this evidence, when credited as true, is sufficient to satisfy a Listed impairment, no outstanding issues remain before a finding of disability can be made. Further administrative proceedings would serve no useful purpose, and this case is therefore remanded for the immediate payment of benefits.

## CONCLUSION

For the reasons stated, the Commissioner's decision is REVERSED and REMANDED for the immediate payment of benefits.

**IT IS SO ORDERED.**

DATED this 8th day of July 2021.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He / Him)  
United States Magistrate Judge